**VENABLE LLP**
Witt W. Chang (State Bar No. 281721)
WWChang@Venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Plaintiff
DOUG HOUGHTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG HOUGHTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HARLEY FRANCO, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF ORAL CONTRACT**<br>2. **BREACH OF CONTRACT IMPLIED IN FACT**<br>3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>4. **QUANTUM MERUIT**<br>5. **PROMISSORY ESTOPPEL/ DETRIMENTAL RELIANCE**<br>6. **UNJUST ENRICHMENT**<br><br>**DEMAND FOR TRIAL BY JURY** |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Plaintiff Doug Houghton ("Houghton"), alleges the following against Defendant Harley Franco ( "Franco"):

## INTRODUCTION

1.      This is an action seeking to enforce Franco's promise to provide Houghton with an equity interest in GH Channel Holding LLC ("GH Holding") and its wholly owned subsidiary, Avalon Freight Services LLC ("Avalon"), in exchange for Houghton's tireless efforts to establish and operate Avalon's business operations. By reneging on the bargain struck, Franco has unfairly deprived Houghton of his earned equity share.

2.      Houghton has been instrumental in establishing and running the business of Avalon. Specifically, in 2012, Houghton identified an opportunity for Franco and Greg Bombard to partner together to bid for a request for proposal to operate freight services in California between Los Angeles and Catalina Island.

3.      Houghton proposed the opportunity to Franco and Greg Bombard, led the charge on competing for and ultimately winning the request for proposal, was instrumental in setting up the joint venture, GH Holding, and its wholly owned subsidiary, Avalon, to operate the business, and ran Avalon's operations.

4.      In exchange for Houghton's initiative, expertise, and thousands of hours of effort, GH Holding's owners/members, Franco, Greg Bombard, and Tim Bombard (together with Greg, the "Bombards") agreed to provide Houghton with a 10 percent equity membership in GH Holding.

5.      Franco, however, has refused to follow through on that agreement. Franco's change of heart occurred after Houghton refused to support Franco in an unrelated dispute involving Franco's March 29, 2019 termination as CEO from Harley Marine Services, Inc. ("Harley Marine"), where Houghton also worked as an employee. Following that unrelated dispute, Franco vindictively and maliciously refused to honor his agreement to contribute his half of the promised

equity and prevented the memorialization of Houghton's 10 percent equity membership.

6.    Franco's actions related to Houghton's 10 percent equity membership constitute a breach of contract and have damaged Houghton by depriving him of his rightful economic interest in GH Holding and Avalon.

7.    In contrast to Franco, the Bombards have been, and remain, committed to upholding their obligations under the contract and are prepared to contribute their half (5 percent) of the equity conveyance. The Bombards are also ready and willing to cooperate with amending the GH Holding Agreement to reflect Houghton's 10 percent equity in GH Holding.

## PARTIES

8.    At all times relevant hereto, Doug Houghton is and has been a citizen and resident of the State of California. Houghton is a board member of Avalon.

9.    Upon information and belief, at all times relevant hereto, Harley Franco is and has been a citizen and resident of the State of Washington and a member and manager of both GH Holding and Avalon, both of which are Delaware limited liability companies.

## VENUE AND JURISDICTION

10.    In accordance with 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over this action because there is complete diversity of citizenship between Franco and Houghton and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.    In accordance with 28 U.S.C. § 1391(b)(2), this Court is the appropriate venue for this action because a substantial part of the events and/or omissions giving rise to Houghton's claims occurred in this District. Further, Avalon—of which Franco is a member and manager—does business in the County of Los Angeles, California and is headquartered in San Pedro, California.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

**FACTUAL ALLEGATIONS**

**A. The Formation of Avalon Freight Services, GH Holding, and the RFP**

12.  In November 2012, Santa Catalina Island, Co. ("Catalina Island") issued a request for proposal (the "RFP") to select a new long-term freight operator for Catalina Island. Catalina Island sent the RFP to Harley Marine, Catalina Channel Express, Inc. ("Catalina Express"), and several other entities.

13.  At that time, Houghton was employed at Harley Marine. Houghton received and reviewed the RFP that was sent to Harley Marine.

14.  Houghton recognized that the freight services in the RFP must originate from the Port of Los Angeles and that Catalina Express already had a permit issued by the California Public Utilities Commission ("CPUC") to operate ferry services out of the Port of Los Angeles and into Catalina Island.

15.  Houghton had previously worked for Catalina Express for over a decade and had a strong relationship with Greg Bombard, co-founder and President of Catalina Express, and his brother, Tim Bombard.

16.  Houghton knew that Catalina Express leased the only property that could be used to operate a freight company between the Port of Los Angeles and Catalina Island.

17.  Houghton thus determined that Harley Marine's best chance to win the RFP would be to partner with Catalina Express.

18.  Houghton brought this opportunity and joint venture recommendation to Franco, then-CEO of Harley Marine.

19.  Franco agreed with Houghton's assessment and decided to pursue this opportunity.

20.  Houghton then approached Greg Bombard (President of Catalina Express) to gauge his interest in a joint venture with Franco to bid for the RFP. Greg Bombard, in consultation with Tim Bombard, agreed.

**V E N A B L E  L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

21.    Houghton submitted the response to the RFP on February 28, 2013 on behalf of the joint venture.

22.    At some point shortly thereafter, Franco decided to pursue the joint venture opportunity in his personal capacity, and not on behalf of Harley Marine.

23.    The Bombards also decided to pursue the joint venture opportunity in their personal capacities and not on behalf of Catalina Express.

24.    On January 15, 2014, the joint venture was notified that it had been awarded the RFP, with service to begin April 1, 2016.

25.    Shortly after winning the RFP, Franco, the Bombards, and Houghton decided to formally memorialize the joint venture as GH Holding, with operations to be run through its wholly owned subsidiary, Avalon.

26.    On March 25 and 26, 2014, Franco and the Bombards legally formed GH Holding—to act as a holding company for Avalon and other potential joint ventures—and Greg Bombard, as President of GH Holding, legally formed Avalon.

27.    On or about the same time, other bidders for the RFP, including Curtin Maritime Corporation ("Curtin"), raised concerns regarding this award.

28.    On October 28, 2014, Avalon filed an application with the CPUC seeking a license to operate as a vessel common carrier between Los Angeles and Catalina Island.

29.    On December 10, 2014, Curtin filed a protest to Avalon's application (the "Curtin CPUC Proceedings"). These proceedings concluded on February 2, 2019 with a decision in favor of Avalon.

30.    On January 21, 2015, Avalon signed a contract with Catalina Island for ten years with two 5-year options (the "Catalina Contract").

31.    On May 13, 2016, Curtin filed a lawsuit against Catalina Island and Avalon (the "Curtin Litigation," together with the Curtin Proceedings, the "Curtin Disputes") in the United States District Court for the Central District of California,

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

Western Division, alleging violations of the Sherman Act and the California Unfair Competition Act. On June 30, 2021, the matter was resolved via a stipulated dismissal with no admission of liability.

**B. Houghton's Sweat Equity**

32.     As soon as the Bombards and Franco decided to partner together, the Bombards and Franco acknowledged that Houghton's involvement was integral to the success of their joint venture. It was clear that Houghton's work on this joint venture was outside the scope of Houghton's employment at Harley Marine.

33.     Houghton worked closely with the Bombards, leading the charge and undertaking the necessary work to complete and submit a winning RFP response. Following award of the RFP, but before award of the Catalina Contract, Houghton ensured that Avalon remained eligible and competitive for the Catalina Contract. Houghton also performed the majority of the non-attorney work necessary to form GH Holding and Avalon. Following the award of the Catalina Contract, Houghton and the Bombards ran Avalon's operations and helped to guarantee Avalon's satisfaction of the Catalina Contract.

34.     Houghton's efforts included, but were not limited to, researching and pursuing the required permits, drafting Avalon's operational plans, building a safety management system, drafting the marine operations manual, and hiring personnel. Houghton and Greg Bombard executed the strategy of locating and designing warehouses, properties, and bids for necessary work. Houghton also assisted with pricing and managing the purchase of trucks, trailers, tugboats, large landing craft, and designing a barge.

35.     Houghton continued to work for Avalon after it won the RFP. His extensive work on behalf of Avalon included operating the vessels, loading the barges, working in the warehouse, preparing manuals for employees, hiring and training personnel, and running other critical operations.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

36.     While Houghton was performing this work for Avalon, Houghton also worked full time at Harley Marine.

37.     Houghton performed his work for Avalon on nights, weekends, and during vacations. Houghton worked almost every day for at least six years—totaling thousands of hours—to assist in forming GH Holding and Avalon, preparing the RFP, and running operations for Avalon.

38.     Because of Houghton's extensive assistance, Avalon won the RFP, was awarded the Catalina Contract, and has successfully and continuously satisfied the Catalina Contract. Without Houghton's involvement, the joint venture would not have won the RFP, and Franco and the Bombards would not have formed GH Holding or Avalon.

39.     Houghton's labor on this endeavor was above and beyond and, in fact, completely separate from his scope of responsibilities for Harley Marine.

**C. Houghton's Earned GH Holding Equity Membership**

40.     Houghton did not perform this labor for free. Instead, early on in the process of establishing GH Holding and Avalon, Houghton, Franco, and the Bombards agreed that Houghton would be compensated for his sweat equity with an ownership stake in the joint venture, the exact amount of which would be determined at a later date (the "Agreement").

41.     From the start through today, the parties were aware that Houghton's labor was performed in exchange for his promised grant of equity membership in GH Holding and Avalon.

42.     As set forth above, Houghton honored his end of the bargain.

43.     On or about November 2015, in furtherance of the Agreement, the Bombards approached Houghton and proposed that Houghton receive a 10 percent equity stake in GH Holding and, by extension, Avalon.

44.     Greg Bombard then proposed the same to Franco, and Franco agreed.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

45.     Specifically, the Bombards and Franco agreed that Houghton would receive a 10 percent equity stake in GH Holding and Avalon for the work he had performed to form GH Holding and Avalon, win the RFP, and operate the business. Greg Bombard and Franco agreed that the equity would come from the equal dilution or distribution of Franco's shares and the Bombards' shares of GH Holding.

46.     On or about January 10, 2016, in furtherance of the Agreement, Greg Bombard and Franco discussed with Houghton their offer to make Houghton a 10 percent equity member in GH Holding in exchange for his sweat equity and continued efforts to operate the business.

47.     During this January 2016 discussion with Franco and Greg Bombard, Houghton accepted the offer of 10 percent equity immediately, formally establishing the payment term and officially forming the contract (the "Contract").

48.     As of 2012, Houghton was actively participating in GH Holding and Avalon member meetings and was treated by the Bombards and Franco as a fellow "partner" (member).

49.     As of 2014, the Bombards and Franco repeatedly and explicitly referred to and introduced Houghton to others as a fellow "partner" (member) of GH Holding and Avalon.

50.     To date, Houghton has never been compensated, by way of his promised 10 percent equity stake or otherwise, by Franco, Harley Marine, Avalon, GH Holding, or any other entity for the work he performed between 2012 and the present relating to GH Holding or Avalon.

**D. Memorialization of Houghton's Earned Equity Delayed**

51.     GH Holding and Avalon were formed shortly after Franco, the Bombards, and Houghton won the RFP. As part of the formation process, the Bombards, Franco, and Houghton met with Robert Stemler, Esq. ("Stemler"), an attorney who was hired to assist with GH Holding's and Avalon's legal formation

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

and other legal formalities. Stemler assisted with drafting the Avalon Agreement, dated March 25, 2014, and the GH Holding Agreement, dated March 26, 2014.

52. Not long after GH Holding and Avalon were formed, Franco, the Bombards, and Stemler discussed amending the Agreements so the entities could function as anticipated and desired. Specifically, throughout 2016 and 2017, Stemler corresponded with the Bombards and Franco regarding memorializing the transfer of 10 percent of the units of GH Holding to Houghton, as promised, along with other changes to the formation documents, including an operating agreement for GH Holding. The consensus, as reflected in this correspondence, was that Houghton would receive the same type of units as the other members.

53. On or about August 2017, Houghton, Franco, and the Bombards attended a meeting at Stemler's office to discuss and review the operational documents for GH Holding and Avalon.

54. At that meeting, Houghton, Franco, and the Bombards acknowledged the Contract and restated their agreement that Houghton would receive a 10 percent equity share of GH Holding in exchange for Houghton's "sweat equity" and continued efforts to operate the business.

55. Despite this agreement, Franco asked that they delay the written memorialization of Houghton's equity share for strategic reasons. Specifically, Franco stated that Houghton was a key witness in the RFP bid protests, including the Curtin Disputes. Franco's stated concern was that, even though Houghton had already been promised the equity interest, Houghton's neutrality as a witness in those proceedings might be questioned if he was awarded an equity interest in GH Holding during the pendency of the proceedings. Franco concluded that distributing the equity to Houghton at this time could jeopardize the RFP and/or the Catalina Contract—the sole purpose for forming GH Holding and Avalon. Franco proposed waiting until the dust settled with the bid protests, specifically the

Curtin Disputes, before formally memorializing Houghton's 10 percent equity interest.

56.     The Bombards and Houghton deferred to Franco's request, thereby modifying the Contract to delay satisfaction of the Contract—making the amendments to the Agreements that would memorialize the equity distribution to Houghton—until after the conclusion of the Curtin Disputes.

57.     Despite the clear and consistent agreement between the Bombards and Franco, as reflected in electronic and verbal communications, that 10 percent of the units of GH Holding would be transferred to Houghton, the equity grant was never formally memorialized in the GH Holding or Avalon operational documents.

58.     Pursuant to the Avalon Agreement, Avalon is governed by a five-person board of directors, with two voting positions elected by Greg Bombard (held by the Bombards), two voting positions elected by Franco (both of which were originally occupied by Richard Padden ("Padden")), and the fifth voting position to be mutually agreed upon and appointed by Greg Bombard and Franco (held by Houghton). Upon information and belief, the two voting positions elected by Franco are now held by Franco and his wife Lela Franco (the "Francos"). Houghton was elected as the "tiebreaker director." The Avalon Agreement has not been formally amended since formation.

59.     GH Holding is the sole member of Avalon. GH Holding is governed by the GH Holding Agreement. Under that agreement, GH Holding issued 10,000 units. GH Holding's ownership and control were split into two identical classes of units and evenly distributed (5,000 units each) between Franco and his affiliates on the one hand (Class A Units), and the Bombards on the other (Class B Units).[1] At formation, the members of GH Holding were the Bombards, and Padden (in his dual capacity as trustee for two separate trusts, one for each of Franco's two children). At formation, Franco owned his interest in GH Holding through the

---

[1] Ex. 1, GH Holding Agreement, Sections 3.1 and 3.2.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

trusts. The GH Holding formation documents have not been formally amended since formation. However, upon information and belief, Padden is no longer a member on behalf of the trusts; instead, Franco's interests are owned jointly by himself, his wife, and the trusts.

60.     Since embarking on this venture, Houghton, the Bombards, and Franco have repeatedly discussed the right time to memorialize Houghton's 10 percent equity interest in GH Holding. To memorialize this interest, a separate class of units would be established for Houghton (Class C Units) that were identical to those of Franco (Class A Units) and the Bombards (Class B Units) and would consist of the transfer of the 10 percent of Class A and Class B Units (1,000 total units), all of which would be held by Houghton.

61.     Franco consistently acknowledged Houghton's entitlement to the equity but expressly deferred written memorialization until the termination of the Curtin Disputes, per the modified Contract.

62.     The Curtin CPUC Proceedings ultimately terminated on February 8, 2019, and the Curtin Litigation ultimately terminated on June 30, 2021.

**E. Houghton's Earned Equity Confirmed Despite Rocky Circumstances for Franco**

63.     In 2018, Franco became embroiled in lawsuits involving his then-employer Harley Marine, which is now known as Centerline Logistics Corporation ("Centerline"), after Franco was alleged to have misappropriated Harley Marine's assets. On or about July 2, 2018, Franco called Houghton and told him that the Harley Marine Board of Directors wanted to replace Franco and that Franco would need Houghton's help to resolve the dispute. Franco asked Houghton to sign an affidavit expressing Houghton's support for Franco and stating that Franco was essential to Harley Marine's operations. Houghton did not believe the content of the affidavit was true and therefore refused to sign the affidavit. Houghton instead

signed an affidavit on July 3, 2018, summarizing the conversation he had with Franco and setting forth his justification for not signing Franco's affidavit.

64.    Harley Marine terminated Franco in March 2019.

65.    Franco, who is especially litigious, and is currently involved in several lawsuits, apparently never forgave Houghton for refusing to support him in the litigation related to Harley Marine/Centerline and, instead, retaliated against Houghton.

66.    For example, on July 22, 2020, Franco brought a separate lawsuit in the Delaware Court of Chancery seeking a declaration that Houghton be removed from Avalon's Board of Directors on the basis that Franco was dissatisfied with Houghton and that Houghton no longer deserved to serve in that capacity. *See Franco v. Avalon Freight Services, LLC and Doug Houghton*, C.A. No. 2020-0608-MTZ (Del. Ch.) ("Avalon Board Litigation"). The Court found that Franco did not have the power to make such a demand and dismissed the case with prejudice.

67.    At the time, the Curtin Disputes had not yet resolved, and thus the time for memorializing Houghton's equity under the modified Contract was not yet ripe. However, the Avalon Board Litigation gave Houghton pause. He decided to seek confirmation from Franco that, despite the Avalon Board Litigation, Franco still intended to satisfy his equity obligations to Houghton at the appropriate time.

68.    On July 29, 2020, Houghton, through counsel, sent Franco a letter seeking confirmation that, despite the Avalon Board Litigation, Franco still intended to comply with his obligation to convey 10 percent ownership interest in GH Holding[2] to Houghton when the time for performance became ripe (*i.e.*, once the Curtin Disputes concluded). Ex. 3, July 29, 2020 Letter.

69.    Franco's counsel, Joseph G. Balice, responded on August 11, 2020, confirming in no uncertain terms that the Avalon Board Litigation was not an

---

[2] Due to what is believed to be either a typographical error or miscommunication, the letter mistakenly referenced an ownership interest in Avalon Freight Services, not GH Holding.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

indication that Franco intended to violate his legal obligations. Ex. 4, August 11, 2020 Letter.

70.   Mr. Balice also confirmed that Franco would abide by his legal obligations to Houghton. Ex. 4 ("Mr. Franco has and will continue to abide by all of his legal obligations in all regards.").

71.   As Franco had not disclaimed his legal obligation to memorialize Houghton's equity, Houghton reasonably understood this statement by Mr. Balice to mean that Franco intended to comply with his obligation to memorialize Houghton's equity once the Curtin Disputes concluded, as the parties had agreed. While the Curtin CPUC Proceedings had concluded on February 8, 2019, the Curtin Litigation was still pending at the time that Mr. Balice responded to Houghton's then-counsel.

72.   In reliance on Franco's counsel's response, Houghton patiently awaited resolution of the Curtin Litigation, per the modified Contract.

**F. Houghton's Earned Equity Refused**

73.   The Curtin Litigation concluded on June 30, 2021.

74.   Houghton reasonably expected that memorialization of his equity stake was a business matter that would be handled at the next Avalon board meeting, as all necessary board members would be present to vote on the necessary modifications to the Company's governing contracts.

75.   Houghton therefore raised the memorialization of his equity stake again at the very next board meeting, which was held on February 2, 2022, and attended by Houghton, the Francos, Franco's attorney Michael Weisberg, the Bombards, Koral Shishido (CPA), and GH Holding and Avalon's attorneys Stemler and Bill Collier (the "Board Meeting").

76.   During that meeting, Houghton referred to the conclusion of the Curtin Litigation and requested the memorialization of the 10 percent equity share to which he was entitled. Franco did not deny that Houghton had been promised

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

this equity share. However, in an apparent act of retribution, Franco stated that Houghton was no longer entitled to the 10 percent equity because Houghton had "damaged" Franco. Franco refused to address the matter further on the basis of unidentified pending litigation. Greg Bombard insisted that the matter be addressed, as there was a commitment made to Houghton that needed to be recognized. Franco's counsel shut down the conversation, stating, "we are not prepared to discuss it."

77.   Upon information and belief, Franco wishes to retaliate against and cause harm to Houghton because Houghton refused to support Franco in the unrelated litigation involving Harley Marine/Centerline.

78.   Notwithstanding the unambiguous promises made to Houghton by both Franco and the Bombards, and Houghton's unassailable dedication to Avalon, Franco has, to this day, refused to perform his obligations under the Contract to provide Houghton with his earned equity stake in GH Holding and Avalon and to amend the GH Holding Agreement to reflect Houghton's earned equity stake.

79.   The Bombards have, to this day, consistently agreed to perform their obligations under the Contract to provide Houghton with his earned equitable interest in GH Holding and Avalon and to amend the GH Holding Agreement to reflect Houghton's earned equity stake.

**G. Delaware Chancery Court**

80.   Believing Delaware Chancery Court to be a proper venue for the relief sought—particularly in light of the prior lawsuit Franco filed in that same court in 2020 in which Franco sought to remove Houghton from Avalon's board of directors—Houghton filed a lawsuit against Franco for the same or similar claims set forth in this Complaint based on the same or similar facts in Delaware Chancery Court on August 26, 2022.

81.   On October 17, 2022, Franco filed a motion to dismiss that complaint, arguing that the Delaware Chancery Court lacked personal jurisdiction over him

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

and that Houghton's claims must be brought in California. Following briefing and oral argument, on July 12, 2023, the Delaware Chancery Court granted Franco's motion, on the basis that the court lacked personal jurisdiction over Franco.

82.    As a result, Houghton brings this Complaint in this Court to seek redress for the substantial harm caused to him by Franco.

**H. Remedies**

83.    For years, Houghton has toiled tirelessly in support of GH Holding and Avalon. Houghton identified the opportunity for a potential joint venture and proposed the joint venture to Franco and the Bombards. Houghton bid for the RFP on behalf of the joint venture and performed non-legal work in support of forming GH Holding and Avalon. Since Avalon's formation, Houghton has continuously assisted with Avalon's operations. Without Houghton's efforts, GH Holding and Avalon would not exist.

84.    Houghton's thousands of hours of work on nights, weekends, and holidays were done in reliance on his partners' promises of equity. Houghton has always held up his end of the deal. Meanwhile, Franco deferred satisfying his end of the bargain until the Curtin Disputes concluded and then, when the time came to meet his obligation and memorialize the transfer of equity at the Board Meeting, Franco vindictively and maliciously refused, harming Houghton.

85.    Houghton is therefore entitled to specific performance and/or monetary compensation.

86.    Houghton seeks specific performance of the Contract and an amendment to the GH Holding Agreement to memorialize Houghton's equity interest, as there is no equitable or adequate remedy at law.

87.    In the alternative, to the extent the Court determines that specific performance is impossible or impractical, Houghton seeks money damages as compensation for his thousands of hours of uncompensated work and resulting loss.

88.    A 10 percent interest in GH Holding, the sole member of Avalon, has a value substantially greater than $75,000.

### FIRST CAUSE OF ACTION
### [BREACH OF ORAL CONTRACT]

89.    Houghton realleges the preceding paragraphs and expressly incorporates them herein by reference.

90.    Franco entered into a valid and enforceable, express oral contract (*i.e.*, the Contract) with Houghton to provide Houghton with a 10 percent equity ownership stake in GH Holding and Avalon in exchange for Houghton's sweat equity and thousands of hours of labor to form GH Holding and Avalon, bid for the RFP, and assist with the operations of Avalon, among other tasks performed by Houghton in furtherance of the Contract.

91.    Houghton has met and exceeded his obligations under the Contract and the Curtin Disputes have concluded. There is no basis for further delaying memorialization of the equity grant.

92.    Franco has breached the contract by failing and/or explicitly refusing to provide Houghton with his promised equity stake in GH Holding and Avalon.

93.    Franco's breaches have damaged Houghton by depriving Houghton of his earned compensation for thousands of hours of work.

94.    Franco has improperly and unjustifiably refused to provide Houghton with the earned equity.

95.    Houghton has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### [BREACH OF CONTRACT IMPLIED IN FACT]

96.    Houghton realleges the preceding paragraphs and incorporates them by reference.

97.    Franco entered into a valid and enforceable, express oral contract with Houghton (*i.e.,* the Contract). However, in the event that this Court finds that no

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

such contract exists, in the alternative, an implied contract can be inferred from the conduct of the parties.

98.    Indeed, Franco intentionally made a verbal offer to Houghton to make Houghton a 10 percent equity member in GH Holding and Avalon in exchange for Houghton's sweat equity in forming GH Holding and Avalon, bidding for the RFP, and playing a critical role with respect to operations of Avalon's business.

99.    Franco knew, or had reason to know, that Houghton would interpret Franco's verbal offer as a contract to make Houghton a 10 percent equity member in GH Holding and Avalon in exchange for Houghton's sweat equity and continued work for Avalon. Houghton did interpret Franco's verbal offer as a contract to make Houghton a 10 percent equity member in GH Holding and Avalon in exchange for Houghton's sweat equity and continued work for Avalon.

100.    Houghton has provided thousands of hours of uncompensated labor for Franco, GH Holding, and Avalon in furtherance of forming the business, competing for and winning the RFP and Catalina Contract, and operating the business under that contract. Houghton rendered these valuable services with the intention and expectation of receiving compensation—specifically, pursuant to the Agreement with Franco and the Bombards, an equity membership in GH Holding and Avalon.

101.    All services rendered by Houghton to Franco, GH Holding, and Avalon were rendered under such circumstances that Franco knew that Houghton expected to be compensated. On many occasions, Houghton, and others on his behalf, stated that he expected to be compensated with the agreed-to equity membership stake in GH Holding and Avalon for the value of his services.

102.    Franco accepted those services, received the benefit of such services, and knew that Houghton expected compensation, via a 10 percent equity membership in GH Holding and Avalon, in exchange for such services.

103.   Without these services, GH Holding and Avalon would not exist and certainly would not have bid for and won the RFP and the Catalina Contract. Houghton's work was also foundational to Avalon's operational success in satisfying that contract.

104.   Houghton has met and exceeded his obligations under that contract. The Curtin Disputes have concluded.

105.   Franco has breached the contract by failing and/or explicitly refusing to provide Houghton with the agreed-to equity in GH Holding and Avalon.

106.   Franco's breaches have damaged Houghton by depriving Houghton of his earned compensation for thousands of hours of work.

107.   Franco has improperly and unjustifiably refused to provide Houghton with the earned equity.

108.   Houghton has no adequate remedy at law.

## THIRD CAUSE OF ACTION
## [BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING]

109.   Houghton realleges the preceding paragraphs and incorporates them by reference.

110.   Franco entered into a valid and enforceable verbal contract with Houghton to make Houghton a 10 percent equity member in GH Holding and Avalon in exchange for Houghton's sweat equity in forming GH Holding and Avalon, bidding for the RFP, and assisting with operations.

111.   Houghton met and exceeded his obligations under the contract.

112.   Franco breached the implied covenant of good faith and fair dealing by impeding Houghton's rights to receive the equity and corresponding rights reasonably expected under the contract.

113.   Franco had an implied obligation to satisfy his obligations under the Contract in a timely manner after the Curtin Disputes concluded.

114.   Houghton reasonably expected that his grant of equity and award of corresponding rights would be memorialized in a timely manner after the Curtin Disputes concluded.

115.   Franco deprived Houghton of the benefit of his bargain by delaying memorialization of that grant of equity.

116.   Upon completion of the Curtin Disputes, Franco refused to address the issue of Houghton's equity share at the Board Meeting. Franco instead demanded that Houghton address the issue at some undetermined time in the future. Franco stated that his refusal to address the memorialization was due to alleged involvement that Houghton had in an unrelated lawsuit that "damaged" Franco. Franco's act was a vindictive, bad faith effort to punish Houghton for failing to support Franco in that lawsuit.

117.   Franco's breach of this implied covenant was unreasonable.

118.   Franco's breach of this implied covenant frustrated the fruits of the bargain that Houghton reasonably expected under the Contract and resulted in damage to Houghton.

119.   Franco's actions have prevented Houghton from accessing the benefits of his equity in GH Holding and any corresponding rights that accompany that equity—benefits to which he was entitled, and which should have been available to him.

120.   By acting as alleged herein, Franco did not act fairly and in good faith and breached the covenant of good faith and fair dealing governing the Contract.

## FOURTH CAUSE OF ACTION
### [QUANTUM MERUIT]

121.   Houghton realleges the preceding paragraphs and incorporates them by reference.

122.   Franco requested that Houghton assist with various, significant tasks in order to form GH Holdings and Avalon, including, but not limited to: preparing

V E N A B L E L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

and submitting the RFP on Franco and the Bombards' behalf; researching and pursuing required permits; drafting Avalon's operational plans; building a safety management system; drafting the marine operations manual; hiring personnel; locating and designing warehouses, properties, and bids for necessary work; assisting with pricing and managing the purchase of trucks, trailers, tugboats, and large landing craft; and designing a barge.

123.  Franco promised that Houghton would be compensated for these services with a 10 percent equity share in GH Holdings and Avalon, 5 percent of which would be transferred to him by Franco.

124.  Houghton performed these services as requested with the expectation that he would be compensated with a 10 percent equity share in GH Holdings and Avalon, 5 percent of which would be transferred to him by Franco.

125.  Franco has benefitted from Houghton's performance of these services, but Franco has not compensated Houghton through the transfer of equity that Franco promised.

126.  Houghton has continued to assist with running Avalon's operations, at Franco's request and/or for Franco's benefit, including by: operating the vessels; loading barges; working in the warehouse; preparing manuals for employees; and hiring and training personnel.

127.  Franco promised that Houghton would be compensated for these services with a 10 percent equity share in GH Holdings and Avalon, 5 percent of which would be transferred to him by Franco.

128.  Houghton has continued performing these services as requested with the expectation that he would be compensated with a 10 percent equity share in GH Holdings and Avalon, 5 percent of which would be transferred to him by Franco.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

COMPLAINT

129.   Franco has benefitted from Houghton's performance of these services, but Franco has not compensated Houghton through the transfer of equity that Franco promised.

### FIFTH CAUSE OF ACTION

### [PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE]

130.   Houghton realleges the preceding paragraphs and incorporates them by reference.

131.   In the alternative, in the event that this Court finds that no contract was formed, Franco should be estopped from denying his promise of equity to Houghton which Houghton relied on to his detriment.

132.   Franco promised Houghton a 10 percent equity membership in GH Holding and Avalon in exchange for Houghton's sweat equity in forming GH Holding and Avalon, bidding for the RFP, and assisting with past, current, and future operations.

133.   This promise was clear and definite. Franco repeated this promise on multiple occasions.

134.   Franco reasonably expected that his pledge would induce Houghton to perform this sweat equity for the benefit of Franco, GH Holding, and Avalon.

135.   In reliance on Franco's representation, Houghton provided thousands of hours of uncompensated labor for GH Holding and Avalon in support of its formation, competition for and award of the RFP and Catalina Contract, and operations under that contract.

136.   Houghton's reliance on Franco's pledge was reasonable.

137.   Houghton relied on Franco's pledge to Houghton's own detriment.

138.   Franco has improperly and unjustifiably refused to provide Houghton with the earned equity or any other compensation for his extensive work performed, which Franco had pledged.

139.   Injustice will result if Franco's pledge to Houghton is not enforced.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## **SIXTH CAUSE OF ACTION**

## **[UNJUST ENRICHMENT]**

140.   Houghton realleges the preceding paragraphs and incorporates them by reference.

141.   In the alternative, in the event that this Court finds that no contract was formed, Franco was unjustly enriched by accepting and benefiting from Houghton's substantial efforts while at the same time improperly and unjustifiably refusing to provide Houghton with his earned equity (or any other compensation) for those efforts, to Houghton's financial detriment.

142.   Franco entered into a verbal agreement with Houghton to make Houghton a 10 percent equity member in GH Holding and Avalon in exchange for Houghton's sweat equity in forming GH Holding and Avalon, bidding for the RFP, and running the operations of the business.

143.   Houghton provided thousands of hours of uncompensated labor for GH Holding and Avalon in furtherance of forming the business, competing for and winning the RFP and Catalina Contract, and operating the business under that contract.

144.   Without Houghton's participation, GH Holding and Avalon would not exist and certainly would not have bid for and won the RFP and Catalina Contract.

145.   The work performed by Houghton conferred a benefit on Franco of his entire equity stake in GH Holding and Avalon and any income or other benefits related thereto.

146.   Houghton rendered valuable services to Franco, GH Holding, and Avalon with the intention of receiving an equity membership in GH Holding and Avalon in exchange for those services rendered.

147.   Franco accepted those services, received the benefit of such services, and knew that Houghton expected compensation, via a 10 percent equity membership in GH Holding and Avalon, in exchange for such services.

148.   All services rendered by Houghton to Franco, GH Holding, and Avalon were rendered under such circumstances that Franco knew that Houghton expected to be compensated. On many occasions, Houghton, and others on his behalf, stated that he expected to be compensated with the agreed-to equity membership stake in GH Holding and Avalon for the value of his services.

149.   Franco was aware of, and had knowledge of, the benefits conferred on GH Holding and Avalon by Houghton during this period.

150.   Franco has improperly and unjustifiably refused to provide Houghton with the earned equity or any other compensation for his extensive work performed.

151.   Franco's knowing acceptance and retention of the services performed by Houghton for GH Holding and Avalon make it inequitable and unjust for Franco to retain these benefits and services without payment for their value. Considerations of natural justice and equity require that this Court provide Houghton with a recovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Doug Houghton respectfully requests that the Court enter judgment in favor of Houghton and against Defendant Harley Franco, and award the following relief to Houghton and against Franco:

1. Specifically enforcing the Contract entitling Houghton to 10 percent of GH Holding and Avalon and further ordering Franco

   a. to transfer 10 percent of his equity in GH Holding and Avalon to Houghton by transferring 10 percent of Class A Units (500 of the 5000 units) to Houghton;

   b. to refrain from any action that would interfere with the Bombards transferring 10 percent of their equity in GH Holding and Avalon to Houghton by transferring 10 percent of Class B Units (500 of the 5000 units) to Houghton; and

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

    c.  to amend Article III of the GH Holding Agreement to establish Class C Units, a separate class of units identical to those of Class A Units and Class B Units, consisting of the transfer of the 10 percent of Class A and Class B Units (1,000 total units), all of which shall be held by Houghton;

2. In the alternative, awarding Houghton damages in the amount that Franco was unjustly enriched, to be determined at trial;

3. Awarding Houghton damages adequate to compensate Houghton for his efforts, in an amount to be determined at trial;

4. Awarding Houghton punitive damages in an amount to be determined at trial;

5. Awarding Houghton reimbursement for attorneys' fees and costs reasonably incurred by Houghton in connection with this lawsuit, in an amount to be determined at trial;

6. Awarding Houghton pre- and post-judgment interest on any damages awarded; and

7. Such other relief as the Court may deem just and proper.

DATED:  August 29, 2023

                    VENABLE LLP

                    By:_____
                    Witt W. Chang
                    Attorneys for Plaintiff Doug Houghton

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

COMPLAINT

# **DEMAND FOR TRIAL BY JURY**

Plaintiff Doug Houghton hereby demands trial by jury on all issues and causes of action triable by jury.

DATED:  August 29, 2023

VENABLE LLP

By: _____
Witt W. Chang
Attorneys for Plaintiff Doug Houghton

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

COMPLAINT